Robert C. **TAYLOR**, Plaintiff,

v.

**AMERICAN AIRLINES**, Defendant.

No. 95–0783–CV–W–9.

United States District Court,
W.D. Missouri,
Western Division.

July 24, 1996.

Robert C. Taylor, St. Louis, MO, Pro Se.

Mary Jo F. Shaney, Rodney A. Harrison, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for defendant.

*ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO MODIFY COMPLAINT*

BARTLETT, Chief Judge.

In the Complaint filed by Robert C. Taylor *pro se,* he asserts that he was improperly terminated from his job with defendant American Airlines. Taylor seeks $6,000,000 "which is meger (sic) to the riches (sic) airline in the free world." *See* Complaint, paragraph 6.

American Airlines has filed a motion for summary judgment. Taylor opposes the motion for summary judgment and has filed a motion to modify his complaint.

I.

*Standard for Motion for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 727–28 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a

genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 249–51, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson*, 477 U.S. at 249–51, 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law. *Id.* at 251–53, 106 S.Ct. at 2512.

## II.

### *Undisputed Facts*

Defendant American Airlines, Inc. hired plaintiff Robert C. Taylor as a fleet service clerk on April 24, 1984. Taylor worked with the fleet service for the duration of his employment with American Airlines and was a member of the Transport Workers Union of America, AFL–CIO, Local 512 (Union).

At all times relevant to this action, Taylor's employment was governed by a collective bargaining agreement (CBA) between American Airlines and the Union.

Under Article 28 of the CBA, American Airlines has sole jurisdiction over the management and operation of its business, including the right to discharge employees for just cause. Article 30 of the CBA provides the exclusive internal grievance procedure for any employee covered under the CBA who is dismissed by American Airlines. Article 31 of the CBA provides the exclusive internal grievance procedure for any employee covered by the CBA who believes that he has not been justly dealt with by American Airlines. Under Article 32 of the CBA, an employee may request a hearing before the System General Board of Adjustment for grievances involving the interpretation or application of the CBA, including discharges from employment by American Airlines for just cause pursuant to Article 28.

As an employee of American Airlines, Taylor received a copy of the Company Employee Handbook. The Employee Handbook sets forth the Company's rules of conduct and states that a violation of any rule may be grounds for dismissal.

Under American Airlines Regulation 135–1, General Rules of Conduct 33, an employee is prohibited from "possessing, dispensing, or using a narcotic, barbiturate, mood-ameliorating, tranquilizing, or hallucinogenic drug, either on duty or off duty, except in accordance with medical authorization." American Airlines Regulation 135–Idg, Appendix A, provides that the Company may require a

drug and/or alcohol test whenever there is reasonable suspicion to believe that an employee is using or has used a prohibited drug. American Airlines Regulation 135–IL provides that any employee with a verified positive prohibited drug test result will be terminated for violation of Company Rule 33.

On July 6, 1990, Taylor visited American Airlines' medical offices at Chicago's O'Hare Airport for a medical examination. At the offices, Taylor acted agitated and obnoxious and smelled of alcohol. Robert Seredick, manager of employee relations at O'Hare Airport, was present and conferred with William Bushell, ramp supervisor at the airport, and R. Pacynski, a Union representative, regarding the appropriate course of action. They concluded that there was a reasonable suspicion that Taylor had violated a company rule of conduct. Taylor was then directed to take a blood and urine drug and alcohol test.

According to American Airlines, Taylor tested positive for cocaine. Taylor disputes the test result.

American Airlines terminated Taylor on August 8, 1990. In a letter dated August 8, 1990, L.D. Hobbs informed Taylor that he was being terminated for testing positive for drugs in violation of American Airlines Regulation 135–1, General Rule of Conduct 33.

### III.

#### Discussion and Analysis

American Airlines argues that the two claims Taylor alleges in his Complaint are both preempted by the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq., because Taylor did not submit the claims to the Company's internal grievance procedure, as provided by the CBA, for the resolution of job related disputes. American Airlines further argues that Taylor should not be granted leave to modify the Complaint by adding the Union as a party because any claim Taylor may have against the Union would be time-barred.

A. *The Railway Labor Act Requires. the Arbitration of Minor Disputes Arising Out of Collective Bargaining Agreements*

 Under the RLA, an employee who has a "minor dispute" with his employer arising out of a CBA must submit his grievance to arbitration before filing a lawsuit. *Taggart v. Trans World Airlines, Inc.,* 40 F.3d 269, 272 (8th Cir.1994). "Minor disputes" are employee grievances arising from the interpretation and application of provisions of a CBA that concern rates of pay, rules or working conditions. *Id.* Minor disputes are "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Id.*

### B. *Both of Taylor's Claims are Minor Disputes Requiring Arbitration under the Railway Labor Act*

 In his Complaint, Taylor alleges that American Airlines "breached union contract by administering drug test without probable cause" and wrongfully dismissed him. Complaint, paragraphs 1 and 5.

 If "an employer asserts a contractual right to take the contested action, the ensuing dispute is minor [for RLA purposes] if the action is arguably justified by the terms of the parties' collective bargaining agreement." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 307, 109 S.Ct. 2477, 2483, 105 L.Ed.2d 250 (1989); *see Calvert v. Trans World Airlines, Inc.,* 959 F.2d 698, 699 (8th Cir.1992) (claims arising out of TWA's decision to require plaintiff-pilot to submit to physical and psychiatric examinations were minor disputes because requirement was arguably justified by the terms of the CBA).

Here, American Airlines argues that it had a contractual right under the CBA to give Taylor a drug test because he appeared to be under the influence of alcohol immediately prior to the test. *See* Article 28 of the CBA and Regulation 135–Idg, Appendix A. Because American Airlines' decision to administer a drug test to Taylor was arguably justified by the terms of the CBA, Taylor's claim constitutes a minor dispute.

Therefore, under the RLA, Taylor was required to submit his claim that American Airlines breached the CBA to the grievance procedure provided by the CBA before filing

this case. *See Taggart, supra,* 40 F.3d at 272.

■ With regard to Taylor's wrongful dismissal claim, the United States Supreme Court held in *Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 323–25, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972), that where the only source of an employee's right not to be discharged is a collective bargaining agreement, the discharged employee must exhaust his administrative remedies under the RLA before bringing a wrongful discharge claim.

The fact that [plaintiff] characterizes his claim as one for 'wrongful discharge' does not save it from the [RLA's] mandatory provisions for the processing of grievances.... [T]he very concept of 'wrongful' discharge implies some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will. Here it is conceded by all that the only source of [plaintiff's] right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement between the employer and the union.... The existence and extent of such an obligation in a case such as this will depend on the interpretation of the collective-bargaining agreement. Thus [plaintiff's] claim, and [the employer's] disallowance of it, stem from differing interpretations of the collective-bargaining agreement.... [The plaintiff's] claim is therefore subject to the [RLA's] requirement that it be submitted to the [Board] for adjustment.

*Id.*

Here, whatever right Taylor had not to be discharged was grounded in the CBA. The dispute about whether Taylor was wrongfully discharged stems from the differing interpretations given to the CBA by American Airlines and Taylor. Consequently, Taylor's claim that American Airlines wrongfully terminated him is a minor dispute. Therefore, Taylor was required by the RLA to submit the wrongful termination claim to the grievance procedure provided by the CBA before filing this case. *See Andrews,* 406 U.S. at 323–25, 92 S.Ct. at 1565; *Taggart,* 40 F.3d at 272.

Under the CBA, American Airlines provides its employees with a grievance procedure and the opportunity to have the System General Board of Adjustment hear their dispute. Under Article 31 of the CBA, an employee may contest an action taken by American Airlines by submitting his grievance to his immediate supervisor and then to a chief operating officer. If dissatisfied with the result of those appeals, the employee may appeal to the System General Board of Adjustment for a hearing. *See* Articles 31 and 32 of the CBA, defendant's exh. 4.

Here, Taylor never filed a grievance pursuant to Articles 31 and 32 complaining that American Airlines improperly gave him a drug test or that they wrongfully dismissed him. Neither Taylor's supervisor, chief operating officer, nor the Systems General Board of Adjustment had the opportunity to consider Taylor's claims. Because Taylor failed to submit his claims to the Company's internal grievance procedure, as required by the RLA, Taylor may not bring the instant action.

■ The only grievance Taylor filed pursuant to the CBA was a grievance complaining of a lack of Union representation; a grievance that was denied. In this grievance, Taylor did not complain that American Airlines breached the CBA or wrongfully dismissed him. Moreover, Taylor never appealed the denial of his grievance to the System General Board of Adjustment. Consequently, the fact that Taylor filed a grievance complaining of a lack of Union representation did not satisfy the requirement that he follow the grievance procedures provided by the CBA for the breach of contract and wrongful dismissal claims he alleges in this action.

Because Taylor failed to submit the claims alleged in this case to the grievance procedure provided by the CBA, the claims are preempted by the RLA. *See Calvert,* 959 F.2d at 699–700 (RLA preempted state law claims arising out of TWA's decision to require plaintiff-pilot to submit to physical and psychiatric examinations because plaintiff did

not exhaust the internal procedures available to him under the CBA). Therefore, defendant's motion for summary judgment will be granted.

### C. Taylor's Motion to Modify the Complaint Will Be Denied

In responding to American Airlines' motion for summary judgment, Taylor requests leave to amend his Complaint to join the Union as a defendant in this action. Taylor intends to allege in the amended Complaint that the Union and American Airlines colluded together to prevent Taylor from pursuing his grievance.

Under Rule 15, Federal Rules of Civil Procedure, "a party may amend the party's pleading only by leave of court . . . and leave shall be freely given when justice so requires." Nevertheless, "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

An employee must file an action alleging that his union breached its duty of fair representation no later than six-months after the challenged action that purportedly violated the RLA. *See West v. Conrail*, 481 U.S. 35, 35–37 n. 1, 107 S.Ct. 1538, 1540 n. 1, 95 L.Ed.2d 32 (1987). The six-month limitations period begins to run at the time the employee knew or had reason to know that the union was breaching its duty to represent him. *See Smith v. General Comm. of Adjustment of Union Pac. Eastern Region*, 767 F.Supp. 1012, 1014 (E.D.Mo.1991).

Here, Taylor visited American Airlines' medical offices in Chicago on July 6, 1990, the date on which American Airlines administered to him a drug test. The results of the drug test, which Taylor disputes, showed that Taylor had cocaine in his system. According to Taylor's affidavit, Taylor contacted the Union and also filed a grievance with the Union on August 14, 1990. On the grievance form, Taylor only wrote the words "29F rights violation." *See* defendant's exh. 11. Article 29(f) of the CBA provides that:

> In meetings for the purpose of investigation of any matter which may eventuate in the application of discipline or dismissal . . . the employee, if he so desires, shall have Union representation. Before written notification of discipline or dismissal is given an employee, he shall be afforded the opportunity to discuss the matter with his supervisor. If he so desires, he shall have a Union representative in such discussion . . .

The grievance Taylor filed was denied on August 21, 1990. Taylor continued to ask the Union for assistance in helping him keep his job with American Airlines.

Although it is not clear what Taylor was filing a grievance about, the most reasonable conclusion based on the record presented is that the grievance was against his Union for failing to represent him in his dispute with American Airlines.

Because Taylor's August 1990 grievance was against the Union for failure to represent him in his dispute with American Airlines, a reasonable juror could only conclude that in August 1990, Taylor believed that the Union had breached its duty to represent him as an employee of American Airlines. Thus, a reasonable juror could only conclude that, almost five years before Taylor filed this action, Taylor knew or had reason to know that the Union had possibly breached its duty of fair representation.

Accordingly, I will not grant Taylor leave to modify his Complaint by adding the Union as a defendant and asserting new claims because the claims Taylor intends to assert would be time-barred by the six-month limitations period of the RLA. *See Smith*, 767 F.Supp. at 1014.

### IV.

### ORDER

Accordingly, it is ORDERED that:

1) defendant's motion for summary judgment is granted; and

2) plaintiff's motion to modify his Complaint is denied.